**UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

**KENTRELL PARKER #371212**                         **CIVIL ACTION**

**versus**                                                         **NO. 05-0399**

**N. BURL CAIN**                                             **SECTION: "K" (1)**

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1]  Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Kentrell Parker, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. On November 18, 1999, he was convicted of second degree murder in violation of La.Rev.Stat.Ann. § 14:30.1.[2]  On December 2, 1999, he was sentenced to a term of life imprisonment, without benefit of parole, probation, or suspension of sentence, with credit for time served.[3]  On March 28, 2001, the Louisiana Fourth Circuit Court of Appeal affirmed his conviction and sentence.[4]  He then filed with the Louisiana Supreme Court a petition for a writ of certiorari[5] which was denied on March 28, 2002.[6]

On or about March 12, 2003, petitioner filed with the state district court an application for post-conviction relief [7] which was denied on July 17, 2003.[8]  He next filed with the Louisiana Fourth Circuit Court of Appeal an application for writs of certiorari and prohibition[9]

---

[2] State Rec., Vol. II of II, minute entry dated November 18, 1999.

[3] State Rec., Vol. II of II, minute entry dated December 2, 1999.

[4] State v. Parker, No. 2000-KA-0616 (La. App. 4th Cir. Mar. 28, 2001) (unpublished); State Rec., Vol. II of II.

[5] State Rec., Vol. I of II.

[6] State v. Parker, 812 So.2d 642 (La. 2002) (No. 2001-K-1271).

[7] State Rec., Vol. I of II.

[8] State Rec., Vol. II of II, Judgment dated July 17, 2003.

[9] State Rec., Vol. I of II.

which was denied on the merits on October 24, 2003.[10]  He then filed with the Louisiana Supreme

Court an application for writs of certiorari and/or review[11] which was denied on January 7, 2005.[12]

On or about January 14, 2005, petitioner filed this federal application for *habeas*

*corpus* relief.[13]  In support of his application, he raises the following claims:

1. Louisiana's statutory scheme setting forth responsive verdicts for

   second degree murder is unconstitutional;

2. La.C.Cr.P. art. 413(C) is unconstitutional, and petitioner's

   constitutional rights were violated due to racial discrimination in

   the selection of the grand jury foreperson;

3. La.Rev.Stat.Ann. § 14:30.1 is unconstitutional;

4. There was insufficient evidence to support petitioner's conviction;

5. The trial court erred in denying the defense motion for a mistrial;

6. The trial court erred in evidentiary rulings; and

7. Petitioner received ineffective assistance of counsel.[14]

---

[10]  State v. Parker, No. 2003-K-1469 (La. App. 4th Cir. Oct. 24, 2003) (unpublished); State Rec., Vol. II of II.

[11]  State Rec., Vol. I of II.

[12]  State *ex rel.* Parker v. State, 891 So.2d 674 (La. 2005) (No. 2003-KH-3373); State Rec., Vol. II of II.

[13]  Rec. Doc. 1.

[14]  Because petitioner's claims as stated were often repetitive and overlapping, the Court has consolidated and reordered the claims for ease of analysis.  However, the substance of the claims has not been changed.

The state concedes that petitioner's federal application was timely filed[15] and does not argue that he failed to exhaust his state court remedies.

<u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we

---

[15] Rec. Doc. 12, p. 2.

stressed in <u>Williams[ v. Taylor</u>, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

<u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); <u>see also</u> <u>Hill</u>, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

<u>Facts</u>

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

Ms. Adrienne Bernard, the victim's mother, testified that her daughter had four children, ranging in age from two to ten years old. Ms. Bernard denied that her daughter kept guns in her house and that she used or sold drugs.  Ms. Bernard further stated that her daughter supported her children through various jobs.

Officer Bruce Cranstoun testified that on March 15, 1999, at approximately 3:30 p.m., a woman flagged him down as he drove on Martin Luther King Blvd., and told him there had been a shooting in apartment 4-C of the Melpomene Housing Development.  As he approached the apartment building, he saw several people and three children standing outside the entrance.  He entered the apartment, and found a woman's body on the floor.  He checked for vital signs, notified the police dispatcher of the homicide, and then checked to be sure that no one else was in the apartment.  Thereafter, he secured the scene, and awaited the arrival of the coroner and homicide detectives.

Dr. James Traylor, who testified as an expert in forensic pathology, performed the autopsy on the victim's body on March 16, 1999.  He opined that a "single perforating tight contact gunshot wound to the left neck" killed the victim.  He explained that because the victim suffered a "perforating", or through and through wound, no bullet was recovered from the victim's body.  Dr. Traylor classified the wound as "tight contact" because he detected a gun muzzle imprint on the victim's neck.

- 5 -

Officer Terrie Clark, an NOPD 911 operator, testified that all 911 calls are recorded and that she received the defendant's call reporting the shooting at 9:09 a.m. on March 15, 1999.   The defendant identified himself by name, and told her that his girlfriend had been shot by two men he saw running from the apartment.  The defendant gave her an incorrect address as the scene of the shooting.[FN]

> [FN] In his 911 call, the defendant told the operator the scene of the shooting was 2319 Martin Luther King Blvd., apartment 4C, which was incorrect.  The defendant placed the call from a pay phone across the street from the housing development and then left the area.  Consequently, there was no one to direct the officers to the correct location, which was 2339 Martin Luther King Blvd., which is across the breezeway from 2319.  When the police arrived at 2319, apartment 4C, the resident turned them away because there had been no shooting at that location. It was not until later that afternoon when Officer Cranstoun was flagged down by a resident of the housing development around 3:30 p.m. that the police located the victim's body.  By that time, family members had placed a 911 call giving the operator the correct address.

The tape of the 911 call was played for the jury.  In the call the defendant identified himself, and told the operator that he found his girlfriend, shot in the neck, at her apartment.  He further stated that he saw two men running from the apartment through the project.

NOPD homicide detective John Deshotel investigated the murder of Kawana Bernard at 2339 Martin Luther King Blvd., apartment 4C.  The apartment door was partially open and the victim's body was on the floor near the front door.  The body displayed a left head wound with an exit wound at the back of the head.  He canvassed the area, and found a spent 9mm-bullet casing on the floor, which had entered and exited the VCR unit, across the room from where the body lay.  Detective Deshotel noticed that the phone was unplugged, and found fifteen small bags of marijuana in the bedroom.  Derielle and Kevielle Bernard, two of the victim's children, told him "Trell" lived with them and their mother.  The children identified the defendant as Trell from a police photograph,

and told Detective Deshotel that their mother, Trell, and Trell's friend Frederick Jones were alone in the apartment that morning when the children left for school. The day after the shooting, the defendant turned himself in at central lock up. Detective Deshotel arrested him, and advised him that he need not make any statement. Subsequently, Detective Deshotel executed a search warrant at the defendant's mother's residence and confiscated a black and gray FUBU jacket containing blood smears on the right sleeve. Further investigation revealed that .25 caliber automatic and 9-mm semi-automatic weapons were fired from the apartment balcony during the argument between the victim and the defendant; however, neither of these weapons was ever found.

Officer Kenneth Leary, Jr., expert firearms examiner, testified that he inspected a 9-mm bullet and casing retrieved from the crime scene and concluded that both pieces were components of 9-mm ammunition.

Kevielle Bernard, the victim's seven-year-old daughter, identified the defendant in court as Trell, and said that he lived with them in the Melpomene Housing complex. She testified that her mother did not like guns, and did not own any. However, Trell kept two guns in the house – one on the shelf in the living room and the other in her mother's bedroom drawer. Her mother argued with Trell, and wanted him to get the guns out of the house.

Frederick Jones testified that he had been staying with the victim and the defendant at the victim's apartment for a few nights prior to the shooting. On the morning of the shooting, he was asleep on the sofa in the living room and awoke to the sound of the defendant packing his belongings. The three were alone in the apartment because the victim's children had gone to school. The defendant and the victim began to argue, then began pushing and shoving each other. The victim attempted to leave the apartment but the defendant brought her back. When the pair was outside the apartment, Jones heard the victim tell the defendant: "That boy see you with the gun at my head." When the pair came back into the apartment, Jones noticed that the defendant was holding a gun. Jones tried to calm the situation, telling the defendant to put the gun away. The defendant put the gun in his jacket. The victim and the defendant were arguing in the living room about the defendant's moving out of the apartment, and taking his clothes with him. The victim refused to allow the defendant to leave with any of the clothes she had bought for him, so as he packed his possessions, she began removing items she said she had purchased. Shortly thereafter, Jones

- 7 -

heard a gunshot and looked up to see Trell on the floor saying he was sorry, and the victim falling to the floor. Jones saw blood, grabbed his jacket and ran out of the apartment. The defendant left right after him, and caught up with him. The defendant asked Jones to accompany him to his mother's house. Jones complied because he feared the defendant would shoot him if he refused. When the defendant came out of his mother's house, his aunt came with him. The trio went back to the project and the defendant alone went back and forth to the victim's apartment three or four times. After his first trip back into the apartment, which was about ten or fifteen minutes after the shooting, the defendant told Jones that victim was still breathing. The defendant used a pay phone across from the project to make a 911 call. Jones stated that prior to the shooting the phone in the apartment worked because he made a call from that phone prior to the shooting.

After making the 911 call, the defendant headed back to the project but upon seeing the police arrive, he and his aunt left in his aunt's car. Jones called his mother and reported what he had seen, and asked her to call the police. Jones denied ever buying drugs from the victim or seeing the victim use or sell drugs. He knew Trell kept two guns in the apartment. Prior to shooting the victim, Jones heard Trell fire one of the guns on the front porch.

Jones admitted that he had two prior narcotics convictions.

Derielle Bernard, the victim's nine-year-old daughter, testified that she, her sister, Kevielle, her mother and Trell lived at 2339 Martin Luther King Blvd., apartment 4C on March 15, 1999. She and her little sister found their mother's body that afternoon when they returned from school. Derielle knocked on the door and when she did not hear her mother coming to open the door, she tried to open it. The door opened only slightly because her mother's feet were blocking the opening. She squeezed through the doorway, and got on the floor to check her mother's heart. She ran to the phone, but someone had unplugged it, and removed the connecting wire. She then ran to a neighboring apartment to ask for help to call the police.

Derielle said that her mother did not own or keep a gun in the apartment but that the defendant had two guns at their apartment. Whenever he left the apartment, he took the guns with him.[16]

---

[16] State v. Parker, No. 2000-KA-0616, pp. 1-6 (La. App. 4th Cir. Mar. 28, 2001) (unpublished); State Rec., Vol. II of II.

<u>La.C.Cr.P. art. 803</u>

Article 803 of the Louisiana Code of Criminal Procedure provides in part:  "When a count in an indictment sets out an offense which includes other offenses of which the accused could be found guilty under the provisions of Article 814 or 815, the court shall charge the jury as to the law applicable to each offense."  Petitioner argues that Article 803 is unconstitutional, at least in cases in which manslaughter is a responsive verdict.

Petitioner notes Louisiana law defines manslaughter as a homicide committed, without any intent to cause death or great bodily harm, when the offender is engaged in the perpetration or attempted perpetration of *any felony not enumerated in statutes setting forth the crimes of first degree and second degree murder or of any intentional misdemeanor directly affecting the person*.  La.Rev.Stat.Ann. § 14:31(A)(2)(a).  He opines that Article 803 is unconstitutional because it does not require the trial judge to include jury charges on the "appropriate underlying felonies or misdemeanors" which could be pertinent under § 14:31(A)(2)(a).

In the last reasoned decision addressing that claim, the Louisiana Fourth Circuit Court of Appeal held:

> [R]elator asserts that La.C.Cr.P. art. 803(A)(2)(a) [sic] is unconstitutional because it fails to require the trial court to charge the jury as to the law of other possible felonies other than the responsive verdicts.  This claim is without merit.  A defendant has the right to request any special jury charge where the jury could infer from the evidence that the defendant was guilty of another underlying felony.[17]

---

[17]   <u>State v. Parker</u>, No. 2003-K-1469, at p. 2 (La. App. 4th Cir. Oct. 24, 2003) (unpublished); State Rec., Vol. II of II.

As the state notes in its response, the precise nature of petitioner's claim is unclear. However, this Court gleans two possible interpretations, neither of which has merit in this case.

First, to the extent that petitioner is arguing that a trial court is required to provide instructions on the entire laundry list of *every possible* felony or misdemeanor which could in *any* circumstance serve as a predicate offense under the manslaughter statute, whether or not supported by the facts of the particular case at hand, this Court is unaware of any jurisprudence holding that the federal constitution requires as much.[18]  Moreover, under Louisiana law, where a defendant is charged with second degree murder, the elements of a predicate offense to manslaughter are not essential elements of the offense charged.  State v. Corley, 703 So.2d 653, 668 (La. App. 3rd Cir. 1997).[19]

Second, to the extent that petitioner is arguing that a trial court is required to provide instructions on those felonies and misdemeanors which, under the facts of his particular case, could serve as a predicate offense under the manslaughter statute, he was not deprived of such an instruction in his case.  In his federal application, petitioner identifies only one predicate offense which would be applicable in his case, i.e. La.Rev.Stat.Ann. § 14:94 (prohibiting the illegal use of

---

[18]  The two cases cited by petitioner certainly do not and are, in fact, completely inapposite to issue presented by this claim.  The first case he cites, Beck v. Alabama, 447 U.S. 625 (1980), simply holds that in a trial on a *capital offense* a jury must be permitted to consider a *lesser included noncapital offense* where the evidence would support a conviction on that offense.  In the other case he cites, Keeble v. United States, 412 U.S. 205 (1973), the Supreme Court held that when a Native American is prosecuted in a federal court under the Major Crimes Act of 1885, he must be afforded an instruction on a lesser included offense supported by the evidence, despite the fact that he could not be prosecuted in federal court on only the lesser included offense under the Act.

[19]  Additionally, where, as here, the defendant did not request a special charge or object to the charge given, the claim is considered defaulted.  Corley, 703 So.2d at 668.

weapons or dangerous instrumentalities).[20]  As noted later in this opinion, the jury was instructed

regarding that offense in connection with the manslaughter instruction.[21]  Accordingly, even under

petitioner's theory, his constitutional rights were not violated.

For the foregoing reasons, the Court finds that petitioner has failed to demonstrate

that the state court's decision rejecting claim this was contrary to, or involved an unreasonable

application of, clearly established federal law, as determined by the Supreme Court of the United

States.  Applying the AEDPA's deferential standard, this Court likewise rejects the claim.

<u>Grand Jury Claims</u>

Petitioner asserts several interrelated claims relating to his indictment by the grand

jury.  He claims that La.C.Cr.P. art. 413(C), which sets forth the manner of impaneling the grand

jury and the selection of the foreperson, was unconstitutional as it existed at the time of his

indictment.  He further claims that his constitutional rights were violated due to racial discrimination

in the selection of the grand jury foreperson.

The state argues that these claims are procedurally barred, correctly noting that

Louisiana law provides that such claims are waived if not asserted in a pretrial motion to quash.

> Any objections arising from the selection of the grand jury foreperson
> are treated as ones alleging discriminatory selection of grand jurors.
> <u>Campbell v. Louisiana</u>, 523 U.S. 392, 118 S.Ct. 1419, 140 L.Ed.2d
> 551 (1998).  All equal protection claims arising out of the selection
> or composition of grand juries in Louisiana remain subject to this
> State's procedural requirements. Any equal protection claim that is
> not asserted in a pre-trial motion to quash is waived.  La.C.Cr.P. arts.

---

[20]  <u>See</u> Rec. Doc. 1, supporting memorandum, p. 10.

[21]  <u>See</u> <i>infra</i> note 33 and accompanying text.

- 11 -

> 533(1) and 535(D); State v. Pierre, 99-3156 (La.App. 4th
> Cir.7/25/01), 792 So.2d 899, 907; State v. Robinson, 32 794 (La.App.
> 2nd Cir.3/1/00), 754 So.2d 311, 321-322, writ denied, 00-989
> (La.3/23/01), 787 So.2d 1008; State ex rel. Roper v. Cain, 99-2173
> (La.App. 1st Cir.10/26/99), 763 So.2d 1, 4-5, writ dismissed, 00-975
> (La.11/17/00), 773 So.2d 733; Deloch v. Whitley, 96-1901
> (La.11/22/96), 684 So.2d 349.

State v. Richthofen, 803 So.2d 171, 194 (La. App. 5th Cir. 2001); see also Williams v. Cain, 125 F.3d

269, 274 (5th Cir. 1997) ("It is undisputable that under Louisiana law, a challenge to the legality of

the grand jury venire must be made by a pretrial motion to quash.").

It is also clear that petitioner's claims were in fact denied based on his procedural

default.  Petitioner first asserted the claims in his state post-conviction proceedings.  In the last

reasoned decision addressing those claims, the Louisiana Fourth Circuit Court of Appeal held:

> [R]elator asserts that the method of selecting grand jury forepersons
> in Orleans Parish pursuant to La.C.Cr.P. art. 413 was unconstitutional
> because it violated the due process and equal protection clauses of the
> United States Constitution and the prohibition against local and
> special laws of Article III, Section 12 of the Louisiana Constitution.
> ... The Louisiana Supreme Court in State v. Dilosa and White, 2002-
> 2222 (La. 6/27/03), 848 So.2d 546, has declared the introductory
> phrase of paragraph B and all of paragraph C of La.C.Cr.P. arts. 413
> and 414 unconstitutional prior to the 2001 amendment. [FN]  The
> high court concluded that because the questioned statutes' regulation
> and selection of grand juries by Orleans Parish Criminal Courts
> clearly concerned criminal actions and the practice of those courts,
> the statutes were local laws and therefore unconstitutional.  Thus
> relator's argument that the method of selecting grand jury
> forepersons pursuant to article 413 (C), prior to the 2001 amendment,
> was unconstitutional has merit.  However, relator admits that counsel
> failed to challenge the constitutionality of the article.  Therefore,
> relator's claim has not been preserved for review.  A motion to quash
> should have been filed to preserve this claim.

> [FN] The court also declared all of article 412 and
> La.R.S. 15:144 unconstitutional.[22]

Regarding procedural bars, the United States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision.  To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims.  This rule applies to state court judgments on both substantive and procedural grounds.  Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).  "When the state court has relied on an independent and adequate state procedural rule, federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice."  Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999).

The first requirement, i.e. that the state ground be "independent" and "adequate," requires little discussion.  The United States Fifth Circuit Court of Appeals has definitively held that

---

[22]  State v. Parker, No. 2003-K-1469, at p. 3; State Rec., Vol. II of II.  The Court notes that with respect to one of petitioner's claims regarding the constitutionality of La.C.Cr.P. art. 413(C) he seems to argue that he was not required to file a motion to quash.  He posits that because Article 413(C) was unconstitutional, the grand jury which issued his indictment was illegally empaneled.  He next reasons that because the grand jury was illegally empaneled, his indictment was invalid.  He then concludes that because his indictment was invalid, the trial court lacked subject matter jurisdiction over his case.  Petitioner is incorrect.  The fact that a grand jury was improperly empaneled is a *nonjurisdictional* defect, and Louisiana law requires that any claim relating to such an issue be raised in a pretrial motion to quash.  See State v. Washington, 900 So.2d 1072, 1077-78 (La. App. 4th Cir.), writ denied, 904 So.2d 722 (La. 2005).

the Louisiana rule requiring that claims challenging grand jury procedures be asserted in a pretrial motion to quash is an independent and adequate state ground so as to support the application of a procedural bar.  Williams v. Cain, 125 F.3d 269, 276 (5th Cir. 1997).

Additionally, it is evident that petitioner cannot meet the "cause and prejudice" test in light of the United States Fifth Circuit Court of Appeals' decision in Pickney v. Cain, 337 F.3d 542 (5th Cir. 2003).  In that case, petitioner's claim challenging the grand jury process was procedurally defaulted in state court because no motion to quash had been filed.  The Fifth Circuit found that petitioner could not overcome the resulting federal procedural bar based on the "cause and prejudice" requirement, holding:

> We need not address whether [petitioner] has made a showing of "cause" because we are confident that he has not been prejudiced. United States v. Shaid, 937 F.2d 228, 234 (5th Cir. 1991).  After reviewing the trial record, we have no doubt that, if [petitioner] had been successful in having his indictment quashed, the State of Louisiana would have sought and obtained a second indictment. ... Given the strength of the State's case, a successful grand jury challenge would have served no purpose other than to delay the trial. Accordingly, [petitioner] has failed to prove actual prejudice.

Id. at 545.  Similarly, this Court has reviewed the evidence against this petitioner and reached the same conclusion.  Accordingly, the procedural bar in this case cannot be overcome based on the "cause and prejudice" test.

Finally, it is also clear that petitioner has not shown that the application of the procedural bar would result in a "fundamental miscarriage of justice."  In order to establish that there would be a fundamental miscarriage of justice, a petitioner must "make a persuasive showing that he is actually innocent of the charges against him.  Essentially, the petitioner must show that,

- 14 -

as a factual matter, he did not commit the crime for which he was convicted." Finley v. Johnson, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted). The United States Fifth Circuit Court of Appeals has held:

> To demonstrate actual innocence, it is necessary that the petitioner show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt ... in light of all of the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongfully excluded or to have become available only after trial.

Lucas v. Johnson, 132 F.3d 1069, 1077 (5th Cir. 1998) (quotation marks and citations omitted).

Applying that standard, the Court finds that, in light of the overwhelming evidence of petitioner's guilt, he has not made a persuasive showing that he is actually innocent of the charge against him. Therefore, he has not demonstrated that any miscarriage of justice will result from the application of the procedural bar. Accordingly, petitioner's claims regarding La.C.Cr.P. art. 413(C) and the grand jury procedures utilized in his case are barred in this federal court.[23]

---

[23] Moreover, the Court notes that petitioner's claim that La.C.Cr.P. art. 413 (C) violated the state constitution would not be a ground for federal relief even if that claim were not procedurally barred. That claim is based on State v. Dilosa, 848 So.2d 546 (La. 2003), in which the Louisiana Supreme Court held that Louisiana laws which established a unique method for the selection of the grand jury venire and foreperson in Orleans Parish violated La. Const. art. III, § 12(A), which prohibits the passage of local laws concerning criminal actions. The fact that those provisions violated the *state* constitution is of no moment in a federal proceeding. Federal *habeas corpus* relief may be granted only to remedy violations of the Constitution and laws of the United States; mere violations of state law will not suffice. 28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1983)

Further, the Court notes that petitioner's claim has no merit even under state law based on State v. Harris, 892 So.2d 1238 (La.) (unpublished appendix available on Westlaw), cert. denied, 126 S.Ct. 102 (2005), in which the Louisiana Supreme Court held:

> The defendant urges that his indictment should have been quashed as it was issued by an unconstitutionally selected grand jury, grand jury foreperson, and grand jury

venire, relying on State v. Dilosa, 02-2222 (La. 6/27/03), 848 So.2d 546.  In Dilosa, this Court struck down as unconstitutional La.C.Cr.P. art. 412 and La. R.S. 15:114 in their entirety, the introductory phrases of La.C.Cr.P. arts. 413(B) and 414(B) and La.C.Cr.P. arts. 413(C) and 414(C) in their entirety.  The offending provisions together provided procedures, applicable only in Orleans Parish, for the selection of the grand jury venire, the impaneling of the grand jury, selection of the grand jury foreman, the time for impaneling grand juries and the period of service, and the rotation of the judges who select and control the grand jury.  This Court found the provisions were "local laws" concerning "criminal actions" which regulated the "practice" of Orleans Parish criminal courts in violation of La. Const. art. III, § 12(A)(3).

In this case, the grand jury that indicted the defendant in October of 1993 and the foreman of that grand jury, were selected while the applicable procedures declared unconstitutional in Dilosa were all in effect.  However, the record reflects, and appellate counsel in brief concedes, that no motion to quash the indictment was ever filed in this case.   A criminal defendant must assert a due process or equal protection claim regarding the selection and composition of a grand jury in a motion to quash filed prior to trial or waive any complaint in that regard.  Deloch v. Whitley, 96-1901 p. 2 (La.11/22/96), 684 So.2d 349, 350.  The defendant, thus, has waived review of this issue by his failure to file a pretrial motion to quash the indictment.

Even if the claim was not procedurally defaulted, the defendant is not entitled to relief.  The statute and codal provisions in Dilosa were declared unconstitutional solely because they were local laws in violation of the state constitution, La. Const. art. III, § 12(A).  "The constitutional prohibition against local laws which underlies the Dilosa decision simply reflects a policy decision that legislative resources and attention should be concentrated upon matters of general interest and that purely local matters should be left to local governing authorities." State v. Williams, 2003-0091 p. 3 (La. App. 4 Cir. 1/14/04), 866 So.2d 296, 298, writ denied, 2004- 0438 (La. 6/25/04), 876 So.2d 831, citing Morial v. Smith & Wesson Corp., 2000-1132 p. 22 (La.4/3/01), 785 So.2d 1, 17, cert. denied, 534 U.S. 951, 122 S.Ct. 346, 151 L.Ed.2d 262 (2001); Kimball v. Allstate Ins. Co., 97- 2885 p. 4 (La. 4/14/98), 712 So.2d 46, 50.  Thus, "the substantial rights of a criminal defendant are not affected per se solely because he is indicted by a grand jury selected pursuant to local laws passed by the Louisiana State legislature."  Id. Where a criminal defendant fails to show that his substantial rights were affected, he is not entitled to relief.  Id.; State v. Rhea, 2004-0091 p. 7 (La. App. 4 Cir. 5/19/04), 876 So.2d 131, 135, writ denied, 2004-0901 (La. 10/1/04), 883 So.2d 1005; State v. Newman, 2003-1721 p. 16 (La. App. 4 Cir. 7/7/04), 879 So.2d 870, 880; see also State v. Mercadel, 2003-3015 p. 8 (La.5/25/04), 874 So.2d 829, 834 (a person can challenge the constitutionality of a statute only if the statute seriously affects his or her rights).  The defendant has made

<u>La.Rev.Stat.Ann. § 14:30.1</u>

Petitioner next asserts two claims challenging the constitutionality of La.Rev.Stat.Ann. § 14:30.1, the second degree murder statute under which he was convicted.  In the last reasoned decision addressing the claims, the Louisiana Fourth Circuit Court of Appeal held:

> [R]elator asserts that his continued custody is illegal because Acts 1979, No. 74 which amended La.R.S. 14:30.1 to deny parole eligibility for those convicted of second-degree murder conflicts with Art. III, Section 15(A) of the Louisiana Constitution because the Acts 1979, No. 74 makes no distinction in the punishment for second-degree murder and first-degree murder.  These claims are without merit.  First-degree murder is a capital offense; second-degree murder is not.[24]

Petitioner's first claim is that Act No. 74 of 1979, which amended La.Rev.Stat.Ann. § 14:30.1, violated the requirement of Article III, § 15(A) of the Louisiana Constitution, which requires that every legislative bill "contain a brief title indicative of its object."  He claims that the title of Act No. 74 did not include an indication that it was altering the penalty for second degree murder.  Even if that is true, which is an issue this Court need not reach, it is of no moment.  At most, any such defect would violate only state law.  However, federal *habeas corpus* relief may be

_____

> no showing that his substantial rights were effected; thus, this assignment of error lacks merit.

<u>Harris</u>, 892 So.2d 1238, unpublished appendix at **3-4 (footnotes omitted) (available on Westlaw).

[24]  <u>State v. Parker</u>, No. 2003-K-1469, at p. 4; State Rec., Vol. II of II.

granted only to remedy violations of the Constitution and laws of the United States; mere violations of state law will not suffice.  28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1983).[25]

Petitioner's next claim is that his right to equal protection was violated because life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence is a possible penalty for both second degree murder under La.Rev.Stat.Ann. § 14:30.1 and first degree murder under La.Rev.Stat.Ann. § 14:30.  Petitioner's equal protection argument simply makes no sense.  The fact that the same penalty is a possibility under two different statutes in no way violates the Equal Protection Clause.[26]  Petitioner cites to no authority which holds otherwise, and this Court is aware of none.

For the foregoing reasons, the Court finds that petitioner has failed to demonstrate that the state court's decision rejecting his claims challenging La.Rev.Stat.Ann. § 14:30.1 was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Applying the AEDPA's deferential standard, this Court likewise rejects those claims.

---

[25]  The Court is aware that petitioner also posits that the alleged defect in the bill's title somehow violated the Due Process and Equal Protection clauses of the federal constitution.  His argument on that point is so nonsensical that neither the state nor this Court is sure how to respond.  Suffice it to say, petitioner has stated no true due process or equal protection violation with respect to this claim.

[26]  To the extent that petitioner is contending that the possible penalty for first degree murder is no harsher than the penalty for second degree murder, he is flatly wrong.  The sole penalty available for second degree murder is life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.  La.Rev.Stat.Ann. § 14:30.1(B).  Although first degree murder is similarly punishable by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence, it is also punishable by *death*.  La.Rev.Stat.Ann. § 14:30(C).

Sufficiency of the Evidence

Petitioner claims that there was insufficient evidence to support his conviction.  The United States Fifth Circuit Court of Appeals has noted that claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979):

> In considering challenges to the sufficiency of evidence in habeas proceedings, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Jackson, 443 U.S. at 319).  "The Jackson inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'"  Santellan, 271 F.3d at 193 (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)).

A sufficiency of the evidence argument presents a mixed question of law and fact. Taylor v. Day, Civil Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000).  Therefore, this Court must defer to the state court unless its decision regarding the claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected petitioner's challenge to the sufficiency of the evidence, holding:

> [T]he defendant contends the evidence is insufficient to support his conviction for second-degree murder.  He argues that "the jury's verdict was irrational when considered in light of conflicting testimony of the State witnesses, the lack of physical evidence, and the circumstances under which the shooting occurred."  He concludes

that at best, "the evidence supports a lesser responsive verdict of manslaughter."

There is sufficient evidence to support a conviction if, after viewing the record as a whole in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817, 820 (La. 1987); see also State v. Mussall, 523 So.2d 1305, 1311 (La. 1988).

The defendant was convicted of second-degree murder, which is defined as the killing of a human being with specific intent to kill or to inflict great bodily harm.  La.R.S. 14:30.1.  Specific intent is defined as: "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."  La.R.S. 14:10; see also State v. Lindsey, 543 So.2d 886, 902-03 (La. 1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990).  Specific intent is an ultimate legal conclusion that can be inferred by the fact finder from the pointing of a gun at close range and pulling the trigger.  State v. Williams, 383 So.2d 369, 373 (La. 1980), cert. denied, 449 U.S. 1103, 101 S.Ct. 899, 66 L.Ed.2d 828 (1981); State v. Procell, 365 So.2d 484, 492 (La. 1978), cert. denied, 441 U.S. 944, 99 S.Ct. 2164, 60 L.Ed.2d 1046 (1979); State v. Guy, 95-0899 (La. App. 4 Cir. 1/31/96), 669 So.2d 517, writ denied 96-0388 (La. 9/13/96), 679 So.2d 102.

Manslaughter is a homicide that would be either first or second-degree murder, but the killing is committed in "sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection."  La.R.S. 14:31(A)(1).  "Sudden passion" and "heat of blood" are not separate elements of the offense but are mitigating factors that exhibit a degree of culpability less than that present when the homicide is committed without them.  State v. Lombard, 486 So.2d 106 (La. 1986).  Because they are mitigating factors, the defendant must establish them by a preponderance of the evidence.  State v. Heck, 560 So.2d 611 (La. App. 4 Cir. 1990), writ denied 566 So.2d 395 (La. 1990).

In this case, all of the inconsistencies in the testimony of the prosecution witnesses were brought to the attention of the jury, and the jury apparently found the testimony sufficiently consistent and credible in finding the defendant guilty as charged.  The defendant has not shown that the jurors abused their discretion in their

credibility finding.  Moreover, the defendant has not established by a preponderance of the evidence that he killing was committed in "sudden passion" or "heat of blood."   The only evidence of provocation came from Frederick Jones, the witness present at the time of the shooting, and he testified that he did not believe the bickering attendant to the defendant's departure from the victim's residence was anything "major."  He testified he heard only one shot, nothing more, no protest from the victim nor any utterance from the defendant.

On the other hand, the coroner testified that the victim suffered a "single perforating tight contact gunshot wound to the left neck."  Contact was so close, in fact, that the victim's neck bore the gun muzzle imprint imparted by gunpowder burns.  This court has held that the discharge of a firearm at close range and aimed at a person is indicative of a specific intent to kill or inflict great bodily harm upon that person.  State v. Guy, 95-0899 (La. App. 4 Cir. 1/31/96), 669 So.2d 517, writ denied 96-0388 (La. 9/13/96), 679 So.2d 102.

The jury heard clear evidence of the defendant's specific intent to kill or inflict severe bodily harm based on the coroner's testimony of the "close contact" wound but it did not hear any evidence of the mitigating factors of "sudden passion" or "heat of blood".  This assignment has no merit.[27]

In the instant case, the state court identified the proper standard, i.e. the Jackson standard, and applied it in a reasonable manner.  Therefore, petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, applying the AEDPA's deferential standard, this Court rejects petitioner's claim challenging the sufficiency of the evidence.

---

[27] State v. Parker, No. 2000-KA-0616, pp. 6-8; State Rec., Vol. II of II.

<u>Denial of Mistrial</u>

Petitioner claims that the trial court erred in denying a defense motion for a mistrial

based on an impermissible reference to other crimes.  On direct appeal, the Louisiana Fourth Circuit

Court of Appeal held:

> By this assignment of error, the defendant complains the State impermissibly introduced "other crimes" evidence by reference to the defendant's "mug shot."  The reference was elicited during Detective Deshotel's testimony:

> PROSECUTOR:

> Q.     You got a photograph because you heard the 911 tape?
> A.     Correct.

> Q.     And did you have a chance to show that to the two young ladies?
> A.     Certainly did.

> Q.     Let me show you what's marked as State's 12 and 13.  Tell me what this one is?
> A.     It's what we call a SID photograph that was obtained from the NOPD mug shot database. It's a photograph of Kentell Parker.

> Defense counsel objected to the reference "mug shot" but the court overruled his objection and refused to grant a mistrial, even though the defense counsel had not made the request.  Later in the proceedings, during the cataloging of exhibits, the defense revisited its objection to the "mug shot."  As a result, the trial judge stated:

> I admonish the jury, the fact that the police may have shown a photograph, and I'm not saying they did, but shown a photograph that was in their possession that was of the defendant, that is in no way evidence that this man has committed any crime, nor that he has indeed committed this crime for which he is on trial ...

- 22 -

La. C.E. article 404 provides that evidence of other crimes, acts or wrongs is generally not admissible.  When a witness refers directly or indirectly to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible, upon request of the defendant, the defendant's remedy is a request for an admonition or a mistrial pursuant to La.C.Cr.P. arts. 770 and 771.   The remark or comment must constitute an unambiguous reference to other crimes.  State v. Lewis, 95-0769, p. 7 (La. App. 4 Cir. 1/10/97), 687 So.2d 1056, 1060, writ denied, 97-0328 (La. 6/30/97), 696 So.2d 1004.  On request, the trial court shall admonish the jury to disregard such a remark or comment. La.C.Cr.P. art. 771.  Upon motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant of a fair trial.  Id.  The granting of a mistrial under La.C.Cr.P. art. 771 is at the discretion of the trial court and should be granted only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial.  State v. Smith, 418 So.2d 515, 522 (La. 1982); State v. Allen, 94-1895, p. 9 (La. App. 4 Cir. 9/15/95), 661 So.2d 1078, 1085, writs denied, 95-2557, 95-2475, (La. 2/2/96), 666 So.2d 1087.  Mistrial is a drastic remedy which is only authorized where substantial prejudice will otherwise result to the defendant.  The determination of whether prejudice has resulted lies within the sound discretion of the trial court.  Id.  A trial court's ruling on whether or not to grant a mistrial for a comment by a police officer referring to other crimes evidence shall not be disturbed absent a clear abuse of discretion.  State v. Manuel, 94-0087, 94-0088, p. 4 (La. App. 4 Cir. 11/30/94), 646 So.2d 489, 491.

In the present case, the detective's answer was not directly related to a particular offense.  The statement at best could be the basis of an inference of another crime but it did not directly refer to another crime.  Further, the Louisiana Supreme Court and this court have held that reference to "mug shots," "booking photos" or Bureau of Identification ("B of I") photographs would not require the granting of a mistrial under Article 770.  See State v. Curry, 390 So.2d 506 (La. 1980); State v. Harris, 258 La. 720, 247 So.2d 847 (1971); State v. Harris, 97-2903 (La. App. 4 Cir. 9/1/99), 742 So.2d 997 writ denied 1999-2835 (La. 3/24/00), 758 So.2d 146. Additionally, "(n)o inference that an accused is a bad person can be drawn simply from the fact that the police had, or were able to procure, his photograph," State v. Youngblood, 325 So.2d 250, 251 (La. 1975).  Since admission of the photographs was not prejudicial,

the judge did not abuse his discretion in refusing to grant a mistrial under C.Cr.P. art. 770 because of the reference to the source of the photographs.

Even if the admission of the reference was error, it was harmless. Under La.C.Cr.P. art. 921, an appellate court shall not reverse a judgment because of any error "which does not affect the substantial rights of the accused." Whether substantial rights of the accused were violated is determined under federal harmless error standards, i.e., whether the guilty verdict in this trial was surely unattributable to the error. State v. [Silas] Johnson, 94-1379, p. 14 (La. 11/27/95), 664 So.2d 94, 100, citing Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). In this case, the jury heard one witness testify that the defendant threatened the victim by holding a gun to her head. That same witness heard the fatal bullet fired, and heard the defendant tell the victim he was sorry. In the face of this evidence it is unlikely the guilty verdict was attributable to the "mug shot" reference. Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).[28]

To the extent that petitioner is arguing that the state court erred in applying the state laws concerning the granting of a mistrial, such a claim is not cognizable in a federal *habeas corpus* proceeding. "'[I]t is not the province of a federal *habeas* court to reexamine state-court determinations on state-law questions.'" Trevino v. Johnson, 168 F.3d 173, 184 (5th Cir. 1999) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)). Moreover, even if the state courts in fact misapplied state law, that would be of no moment in this proceeding. Federal *habeas corpus* relief may be granted only to remedy violations of the Constitution and laws of the United States; again, mere violations of state law will not suffice. 28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1983).

---

[28] State v. Parker, No. 2000-KA-0616, pp. 8-11; State Rec., Vol. II of II.

To the extent that petitioner is arguing that the reference to the "mug shot" violated his federal constitutional rights, he has failed to demonstrate that he is entitled to *habeas* relief on that basis. The United States Fifth Circuit Court of Appeals has noted:

> We will not grant habeas relief for errors in a trial court's evidentiary rulings unless those errors result in a "denial of fundamental fairness" under the Due Process Clause. The erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction.

Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998) (citations omitted); see also Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998) ("[O]nly when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted."). Even if the testimonial evidence was inadmissible, it cannot be said to have played a crucial, critical, and highly significant role in petitioner's conviction in light of the judge's admonition, which there is no reason to believe the jurors failed to heed, and the overwhelming evidence of petitioner's guilt. Petitioner has not met his burden to demonstrate that the reference to the "mug shot" resulted in a denial of fundamental fairness.

Accordingly, petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Applying the AEDPA's deferential standard, this Court rejects petitioner's claim.

### Evidentiary Rulings

Petitioner next claims that the trial court erred in its evidentiary rulings regarding the admission of certain photographs and of the bullet and bullet casing.

Petitioner first claims that the state court erred in admitting three photographs, marked as State's Exhibits 3, 4, and 7, without a proper foundation or identification.  However, the Louisiana Fourth Circuit Court of Appeal held:

> In another assignment of error the defendant argues that the trial court allowed certain photographs into evidence for which a proper foundation or identification had not been made.  Specifically, he objects to State's exhibits 3 and 4, which were photographs of the victim's wounds and State's exhibit 7, a picture depicting the living room in the victim's apartment where her body was found.
>
> In the cataloguing of evidence, the defense objected to the introduction of State's exhibit's 3, 4, and 7 on the basis that no one identified the photographs.  The judge sustained the defense objection and the photographs were not admitted into evidence.  The judge removed the photographs from the collection of admissible evidence, which the jury ultimately viewed, and returned them to the prosecutor.  However, unnoticed by defense counsel and the judge, during the State's final closing argument, the prosecutor remarked and seemingly demonstrated:
>
> > ... These are not the prettiest photos and I'm not going to flash this up to y'all.  But if you didn't see it, I want you to look back at this.  The one on the back that says **State's 3**.  Look at this if you need to.  I don't want to show y'all this.  I know this is disturbing to a lot of you.  You can see the muzzle mark on her neck.  You can see the close tight contact perforated wound that [the coroner] told you about ... Those of you who checked it, do you see any bruising on her? ... (emphasis supplied)
>
> Nevertheless, defense counsel's objection that State's exhibits 3 and 4, the photographs of the victim's wounds, were not identified has no basis in fact.  The coroner testified, explaining the mechanism of the victim's death, and the prosecutor displayed State's exhibits 3 and 4 to the doctor:
>
> PROSECUTOR:

Q.      I'm going to show you what we're going to
        mark as State's exhibit three.   Can you
        describe what's pictured, which wound is
        that?

A.      This is actually the –

DEFENSE COUNSEL:

Objection, Your Honor.  He's showing it to the Jury
and I object to that.

BY THE COURT:

I'll sustain that.  If the gentleman wants to just view
it himself.

A.      This is the entry gunshot wound which shows
        some dried blood about the wound, as well as
        the muscle [muzzle] imprint of the weapon.

Q.      I'm going to show you what's marked as
        State's Four.  Can you tell us what wound this
        is that you see there?

A.      This is a view of the exit wound with some
        blood surrounding it.

Q.      And do both of these photographs depict the
        wounds that you just described to the jury?

A.      Yes, they do.

Although the photographs were ruled inadmissible and the
prosecutor improperly published them to the jury during closing
arguments, the foregoing excerpt of trial testimony belies the
defendant's assertions that the photographs were not identified.
Nevertheless, because the State apparently did publish at least one of
the photographs to the jury, despite the court's having sustained
defense counsel's objection as to its admissibility, the focus shifts to
whether the error impacted the jury's verdict.

- 27 -

An error is harmless if it does not affect substantial rights of the defendant, La.C.Cr.P. art. 921, i.e., whether the guilty verdict in this trial was surely unattributable to the error. <u>Sullivan v. Louisiana</u>, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). In this case, the coroner testified extensively as to the victim's wounds, explaining the bullet trajectory and the devastating injuries it inflicted. It is difficult to imagine that the jury's viewing the photographs, after having been supplied such a graphic mental picture of the wounds, contributed to the guilty verdict.[29]

In this proceeding, petitioner's only claim regarding the photographs is that the trial court erred in admitting them into evidence. As noted by the state court, that claim is factually inaccurate – the photographs in question were *not* admitted. Accordingly, petitioner is not entitled to relief based on that claim.[30]

Regarding admission of the bullet and bullet casing, the Louisiana Fourth Circuit Court of Appeal held:

[T]he defendant charges error in the court's allowing the State to introduce exhibits 18 and 19, the bullet and bullet casing, in spite of its failure to show the chain of custody.

Defense counsel objected to Officer Kenneth Leary's testifying that the bullet and bullet casings were retrieved from the scene of the shooting when in fact he did not retrieve the evidence. A crime technician confiscated that evidence. The court sustained the objection and addressed the jury:

I would sustain that and admonish the Jury to disregard that. He does not know, the gentleman,

---

[29] <u>State v. Parker</u>, No. 2000-KA-0616, pp. 11-13; State Rec., Vol. II of II.

[30] Petitioner does not assert a claim that his rights were violated by the prosecutor's apparent use of the photograph during his closing argument. Nevertheless, even if he had asserted such a claim, this Court agrees with the state court's conclusion that any such error was ultimately harmless and would not merit relief.

> who may have collected them unless he was there ...
> I so admonish the Jury to disregard the comment.

Hence, the court did not allow Officer Leary to testify that the bullet and bullet casing were found at the murder scene, only that they were components of 9-mm ammunition. Nevertheless, the defendant complains that the State was allowed to introduce inadmissible evidence from which the jury could have inferred that a 9-mm gun was employed to shoot the decedent.

Even if the admission of the bullet was error, the defendant is unable to demonstrate any prejudice. In his opening statement defense counsel advised the jury there were guns in the apartment, the victim's daughter testified her mother had no guns but that the defendant kept two in the apartment. Frederick Jones testified he saw a gun in the defendant's hand just prior to the shooting and also that the defendant held the gun to the victim's head when they first began to argue. Whether a 9-mm handgun killed the victim or a weapon of another caliber is of little note in light of the overwhelming evidence that the defendant shot the victim.[31]

Challenges to the admissibility of evidence based on an improper chain of custody involve matters of state evidentiary law, and defects in the chain of custody alone normally do not rise to the level of a constitutional deprivation. See Taylor v. Maggio, 581 F. Supp. 359, 365-66 (E.D. La.), appeal dismissed, 727 F.2d 341 (5th Cir. 1984); see also Cedillo v. Dretke, No. Civ. A. 403CV428A, 2003 WL 22976640, at *4 (N.D. Tex. Dec. 16, 2003); Payne v. Johnson, No. Civ. A. 3:96-CV2101-G, 1998 WL 664973, at *6 (N.D. Tex. Sept. 21, 1998). As was noted in Taylor:

> States have traditionally been afforded substantial latitude in fashioning their own rules of evidence and criminal procedure. Therefore, questions relating to the admissibility of evidence are matters of State law and generally do not give rise to constitutional errors which are subject to redress in Federal habeas corpus proceedings.

---

[31] State v. Parker, No. 2000-KA-0616, pp. 13-14; State Rec., Vol. II of II.

Taylor, 581 F. Supp. at 365-66; see also Derden v. McNeel, 978 F.2d 1453, 1458 (5th Cir. 1992)

("[E]rrors of state law, including evidentiary errors, are not cognizable in habeas corpus as such.").

Rather, as previously noted in this opinion, federal *habeas* relief is warranted for evidentiary errors

only where the erroneous admission of prejudicial evidence was a crucial, critical, highly significant

factor in the petitioner's conviction such that he was denied fundamental fairness.  Neal v. Cain, 141

F.3d 207, 214 (5th Cir. 1998); see also Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998).

        In the instant case, as the state court noted, petitioner has failed to establish even that

the evidence was wrongly admitted.  In addition to the reasons noted by the state court, this court

further notes that petitioner's underlying legal premise, i.e. that evidence is inadmissible unless a

proper chain of custody is established at trial, is simply incorrect.  The Louisiana Supreme Court has

held:

> In order to introduce demonstrative evidence, it suffices if the
> foundation laid establishes that it is more probable than not that the
> object is the one connected with the case; the lack of positive
> identification or a defect in the chain of custody goes to the weight
> of the evidence rather than to its admissibility.

State v. Sam, 412 So.2d 1082, 1086 (La. 1982).  "Ultimately, a chain of custody or connexity of the

physical evidence is a factual matter for the jury."  State v. Addison, 871 So.2d 536, 551 (La. App.

5th Cir.), writ denied, 885 So.2d 584 (La. 2004).  Nevertheless, this Court notes that even if the

evidence was wrongly admitted in the instant case, it cannot be said that the evidence was a crucial,

critical, highly significant factor in the petitioner's conviction in light of the other overwhelming

evidence of his guilt.

In light of the foregoing, petitioner has failed to demonstrate that the state court's decision regarding his evidentiary claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, applying the AEDPA's deferential standard, this Court rejects petitioner's claims.

Ineffective Assistance of Counsel

Petitioner contends that his trial counsel was ineffective.   In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. See id. at 697.  If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong.  Id.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide

range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.

A claim of ineffective assistance of counsel is a mixed question of law and fact. Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Therefore, this Court must defer to the state court on such claims unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

First, petitioner argues that counsel should have objected to the jury charges in this case because the charge regarding manslaughter was incomplete.  He alleges that although the jurors were charged properly as to manslaughter under La.Rev.Stat.Ann. § 14: 31(A)(1), they received no instruction regarding § 31(A)(2)(a).  In the last reasoned opinion addressing petitioner's claim, the Louisiana Fourth Circuit Court of Appeal held:

> [R]elator asserts that his trial counsel was ineffective for failing to object to the trial court's failure to charge the jury with the definition of manslaughter, a responsive verdict.  This claim is without merit. The jury charge transcript of November 18, 1999, which the trial

court provided as per this Court's order of September 25, 2003, reflects that the trial court correctly charged the jury with the responsive verdict of manslaughter.[32]

This Court notes that Louisiana law defines manslaughter as:

(1) A homicide which would be murder under either Article 30 (first degree murder) or article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection.  Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that the average person's blood would have cooled, at the time the offense was committed; or

(2) A homicide committed, without any intent to cause death or great bodily harm.
> (a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person; or
> (b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Article 30 or 30.1.

La.Rev.Stat.Ann. § 14: 31(A).  In the instant claim, petitioner contends that the jurors should have been instructed that he could be found guilty of manslaughter under § 31(A)(2)(a) if he was found to be in engaged in the illegal use of a weapon or dangerous instrumentality.  However, as the state appellate court correctly noted, the jurors were so charged.  The transcript reflects that the following instruction was given:

> There is a second way that a manslaughter may occur.  Where there was no intent to kill of [sic] inflict great bodily harm.  However, the offender was engaged in the discharge of a firearm illegally.  That

_____

[32]  State v. Parker, No. 2003-K-1469, at p. 1; State Rec., Vol. II of II

is, where he discharged a firearm intentionally or negligently, under circumstances where it was reasonable to foresee that human life might be in danger.  The discharging of a firearm, if it occurred intentionally or through criminal negligence, that is, where the person exhibited a total or wanton disregard for the interest of others, where there was a gross deviation below the standard of care expected of persons in similar circumstances.  And that in firing that gun, either intentionally or through criminal negligence the gunfire killed Ms. Bernard.  If that was the determination beyond a reasonable doubt by the Jury, the Jury would be justified in returning a verdict of guilty, but only of Manslaughter.[33]

Accordingly, petitioner's claim is factually inaccurate.  Counsel was not ineffective in failing to object to the jury charge as alleged, because the charge was in fact given.

Second, petitioner argues counsel was ineffective in failing to request a special jury charge on negligent homicide.[34]  In the last reasoned opinion addressing petitioner's claim, the Louisiana Fourth Circuit Court of Appeal held:

[R]elator asserts that his trial counsel was ineffective for failing to request a special jury charge on negligent homicide.  Negligent homicide is the killing of a human being by criminal negligence.  La. R.S. 14:32.  No evidence was presented that the victim and relator fought over the gun before it discharged or that it discharged accidentally or that relator negligently discharged it.  Furthermore, the trial court had to instruct the jury that pursuant to La. C.Cr.P. art. 814 the only responsive verdicts to an indictment charging the defendant with second degree murder were guilty, guilty of manslaughter, and not guilty.  In any event, the evidence presented

---

[33]  State Rec., Vol. I of II, transcript of jury charges given on November 18, 1999, p. 6.

[34]  At the time of petitioner's conviction, negligent homicide was not a responsive verdict to a charge of second degree murder.  Act 739 of the 2004 Regular Session amended La. C.Cr. P. 814(A)(3) to add negligent homicide as a responsive verdict to such a charge.  However, even before that amendment, negligent homicide was long recognized as a lesser included offense of manslaughter.  See, e.g., State v. Tompkins, 403 So.2d 644, 649 n.7 (La. 1981).

at trial was sufficient to support the jury's verdict that relator was guilty of second degree murder.[35]

Regarding claims such as this one, it must be noted:

> A decision to forgo a charge on lesser included offenses is strategic in nature. Strategic choices made after reasonable investigation will seldom if ever be found wanting, because we are reluctant to second-guess matters of trial strategy simply because the chosen strategy has failed.

Lake v. Portuondo, 14 Fed. App'x 126, 128 (2nd Cir. 2001) (internal citations and quotation marks omitted); see also United States ex rel. Webster v. DeTella, 965 F. Supp. 1124, 1132-33 (N.D. Ill. 1997) ("As for the decision not to offer a jury instruction on a lesser included offense, that is within the realm of trial strategy, an area in which Monday morning quarterbacking is discouraged. ... That [counsel's] strategy misfired is no proof of ineffectiveness; even the best trial attorney may misjudge trial strategy on occasion."). For example, such a strategy may validly be employed if defense counsel feels that he can establish reasonable doubt with respect to the charged offense:

> Submission of lesser included offenses may give the jury a basis for finding a defendant guilty of a crime where the prosecution was unable to prove the elements of the original crime charged beyond a reasonable doubt. Counsel may have appropriately wished to avoid this possibility and this decision therefore did not constitute ineffective assistance of counsel.

Colon v. Smith, 723 F. Supp. 1003, 1008 (S.D.N.Y. 1989). Additionally, counsel's failure to push for inclusion of a special charge on a lesser offense may result from an equally valid strategic choice to avoid a possible compromise verdict, opting instead to try to obtain a hung jury or an outright acquittal. In light of the foregoing considerations, the Court finds that petitioner has not

---

[35]   State v. Parker, No. 2003-K-1469, at pp. 1-2; State Rec., Vol. II of II.

demonstrated that his counsel performed deficiently by not objecting to the trial court's failure to

include a special charge on negligent homicide.

Moreover, even if counsel's performance were found to be deficient in that respect,

the Court additionally finds that petitioner has not established prejudice.   In light of the

overwhelming evidence of petitioner's guilt of second degree murder and the jury's obvious

rejection of the responsive verdict of the lesser crime of manslaughter, there is no reasonable

probability that the outcome would have changed in this case even if the negligent homicide

instruction had been given.  Accordingly, he has demonstrated no prejudice resulting from counsel's

failure to request such an instruction.  <u>See</u> <u>Kubat v. Thieret</u>, 867 F.2d 351, 365 (7th Cir. 1989);

<u>Washington v. United States</u>, 291 F.Supp.2d 418, 442 (W.D. Va. 2003).

Third, petitioner claims that counsel was ineffective in his investigation and

impeachment of Frederick Jones, the eyewitness to the murder.   In the last reasoned opinion

addressing petitioner's claim, the Louisiana Fourth Circuit Court of Appeal held:

> Relator's ... claim asserts that trial counsel was ineffective for
> failing to investigate and impeach the testimony of Frederick Jones.
> Specifically, he argues that in his statement Jones said that the victim
> and relator were fighting, that he did not see the actual shooting but
> when he heard the shot he saw relator on the floor and the victim
> falling to the floor.  At trial, Jones testified that relator and the victim
> began to argue, then began pushing and shoving each other.  The
> victim attempted to leave the apartment but the defendant brought her
> back.   When the pair was outside the apartment, Jones heard the
> victim tell the defendant:  "That boy see you with the gun at my
> head."  When the pair came back into the apartment, Jones noticed
> that relator was holding a gun.   Jones tried to calm the situation,
> telling relator to put the gun away.  Relator put the gun in his jacket.
> The victim and relator continued to argue in the living room.  The
> victim refused to allow the defendant to leave with any clothes that
> she had bought for him.  As he packed his possessions, she began

removing items that she claimed she had purchased. Shortly thereafter, Jones heard a gunshot and looked up to see Kentrell on the floor saying he was sorry, and the victim falling to the floor. Thus, relator's trial testimony was essentially the same as his statement given to the police. Relator has failed to show prejudice or that counsel's performance was so deficient as to deny him a fair trial. This claim is without merit.[36]

Although petitioner couches his claim in part as a failure to investigate, he provides no evidence that counsel was in fact unaware of or unfamiliar with Jones' prior statement. Rather, petitioner's claim is really that counsel was ineffective in failing to more vigorously cross-examine Jones based on that prior statement. However, "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment." Ford v. Cockrell, 315 F.Supp.2d 831, 859 (W.D. Tex. 2004), aff'd, 135 Fed. App'x 769 (5th Cir. 2005), cert. denied, 125 S.Ct. 1026 (2006). The United States Supreme Court has cautioned courts not to second-guess counsel's decisions on such matters through the distorting lens of hindsight; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy. Strickland, 466 U.S. at 689. After comparing Jones' statement and trial testimony, the state courts found that the inconsistencies were of no great significance. Petitioner has failed to demonstrate otherwise.

Lastly, petitioner claims that counsel was ineffective in failing to file a pretrial motion to quash the indictment based on the unconstitutionality of La.C.Cr.P. art. 413(C) and the

---

[36] State v. Parker, No. 2003-K-1469, at pp. 2-3; State Rec., Vol. II of II.

alleged racial discrimination in the grand jury procedures.  In the last reasoned opinion addressing petitioner's claim, the Louisiana Fourth Circuit Court of Appeal held:

> An ineffective assistance of counsel claim is founded in prejudice to the defendant.  Relator has failed to show, given the overwhelming evidence against him, that he would not have been indicted if the process for selecting grand jury forepersons had been racially neutral. Therefore, relator has failed to show prejudice or that counsel's performance was so deficient as to deny him a fair trial.  [This claim is] without merit.[37]

As noted earlier in this opinion, in light of the evidence in this case, a successful motion to quash would have resulted only in the state procuring a new indictment.  Therefore, petitioner cannot demonstrate that he was prejudiced by his counsel's failure to challenge the original indictment and so cannot meet his burden under Strickland.  See Pickney v. Cain, 337 F.3d 542, 546 (5th Cir. 2003).

For all the foregoing reasons, petitioner has failed to demonstrate that the state court's decision regarding any of his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Applying the AEDPA's deferential standard, this Court likewise rejects those claims.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Kentrell Parker be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after

---

[37]  State v. Parker, No. 2003-K-1469, at pp. 3-4; State Rec., Vol. II of II.

being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from

a failure to object.  <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en

banc).

New Orleans, Louisiana, this twenty-fourth day of July, 2006.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**